# 16-CV-81916 ROSENBERG/BRANNON

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO:



FILED BY _____ D.C.

NOV 28 2016

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

KENNETH W. BROWN
   Plaintiff,

v.

DAVID MERRILL, ESQ., MERRILL, PA.,
TALARCHYK & MERRILL, TINA M.TALARCHYK, ESQ.,
OZMENT & MERRILL, PA., and
DRAKE OZMENT, ESQ.
   Defendants

_____/

## COMPLAINT

---

   The Plaintiff, KENNETH W. BROWN sues the Defendants, David Merrill, Esq., Merrill, PA., hereinafter referred to as "Merrill", Tina Talarchyk, Esq., Talarchyk Merrill, P.A. referred to as "Talarchyk", Drake Ozment, Esq Ozment Merrill, P.A. referred to as Ozment, each as agents, employees and principals respectively and allege as follows:

### NATURE OF THE CASE

This is an action for damages in excess of $15,000.

1. Kenneth W. Brown is a resident of Palm Beach County, Florida.
2. On or about February 13, 2013, Kenneth W. Brown (K. Brown), the Plaintiff filed Chapter 11 Debtor-In-Possession Bankruptcy Case No: 13-13343-EPK. The legal representation was the law firm Talarchyk Merrill P.A., Talarchyk Merrill, P.A. Tina Talarchyk and David Merrill who were partners that were retained to advise, evaluate and review the prospects and subsequently represent the Plaintiff in the matter.

1

3. The Defendant Talarchyk & Merrill, a law firm existing in which the Defendant Tina Talarchyk was a partner with her partner co-Defendant David Merrill. This action is brought upon these Defendants who egregiously failed in gross negligence and breached their fiduciary duty to perform in the average or customary standard of care owed the Plaintiff for their representation in his legal matter. Herein the legal services owed to the Plaintiff by the Defendant(s) were performed by them individually as well as authorized agents and employees of Talarchyk & Merrill. A law firm domiciled in Palm Beach, Florida.

4. The Defendant Merrill, PA., is a predecessor law firm to Ozment & Merrill P.A. in which David Merrill acted as agent and principal. All of the actions or inactions complained of herein were performed by him individually as well an agent and employee of Merrill, P.A. that transferred from Ozment Merrill P.A. A law firm domiciled in West Palm Beach, Florida.

5. The Defendant, Ozment & Merrill, PA., is the predecessor law firm in which David Merrill and Drake Ozment were the agents and principals. All of the actions or inactions complained of herein were performed by them individually as well as agents and employees of Ozment Merrill, P.A., A law firm domiciled in West Palm Beach, Florida. Ozment Merrill, P.A. was the successor firm to Talarchyk Merrill, P.A.

6. Prior to the bankruptcy petition filed on February 13, 2013, the Plaintiff sought the Talarchyk Merrill law firm directly from the referral of Drake Ozment of the Drake Ozment law firm. The Plaintiff followed up on this referral to go and meet with and to discuss the ramifications of filing a chapter 11 bankruptcy and the particulars expressed as highly skilled expertise in Bankruptcy matters especially related Chapter 11 reorganizations. The Chapter 11 matters were specifically professed to be legal skills of the Talarchyk Merrill law firm. These partners gave specific assurances and promises to the Plaintiff about their expertise to review the important fundamentals and the specifics related to that of the Plaintiff and his attendant financial position. This review was to be specifically related to the necessity or the appropriateness of filing a Chapter 11 for the Plaintiff's voluntary benefit to utilize the protection attributed to the filing a Chapter 11. The initial meeting and subsequent retainer were to form the basis for a detailed prior to filing that was to adequately explain and eventually implement whatever course of action would be appropriate to result

2

or assist in actions for the financial betterment to the Plaintiff. This was not the result for the period of the Bankruptcy filed on February, 14, 2013 and closed on May  2016.

7.  Weeks after the unannounced filing of the Chapter 11 Bankruptcy, the Talarchyk Merrill partnership ended March 2013 and the Plaintiff was placed in the awkward position to shoes which attorney to continue the newly filed case.

8.  Initially K Brown decided to continue with Tina Talarchyk. This was in part based upon the advice of Divorce counsel Phillip Chopin, Esq. However, later this decision encountered many serious concerns about Ms. Talarchyk's loyalty, advice and work product.

9.  Weeks, later the Talarchyk firm became Talarchyk & Newburgh. Steven Newburgh, Esq. apparently became the new de facto counsel of record. Mr. Newburgh weeks after taking Merrill's early position to represent matter. Mr. Steven Newburgh, Esq. quickly ended his relationship with Ms. Talarchyk. This departure remonstrated in serious concerns not only about Ms. Talarchyk's temperament but her competence and her integrity to continue in the best interests for the Plaintiff in this bankruptcy matter.

10. Having remained in contact with David Merrill sometime October 2013, he provided a viable reassurance and offered the competitive pressure to terminate Ms. Talarchyk's representation in favor of retaining the Ozment Merrill law firm. The Qzment & Merrill law firm provided the confidence and assurances that a competent representation would continue all matters before the Court.

11. Awkwardly without notice sometime in late May of 2015, David Merrill had left Ozment Merrill to my surprise to start Merrill, P.A. After not being received by Drake Ozment at his office, the receptionist there advised me that David Merrill was now Merrill, P.A. David Merrill had told me then that my case was moved with him and that he would be handing matters.  Not to worry. Thus, David Merrill continued to represent the matter as both Plan Administer and as counsel of record.

12. The nature of this case is the pre-litigation and post litigation continuous gross negligence, misrepresentations, fraud, breach of fiduciary duty, and malpractice that severely altered and maliciously harmed the Plaintiff irreparably at the time of closing the Bankruptcy in May of 2016.

13. The Talarchyk Merrill firm filed the necessary bankruptcy schedules to identify the Plaintiff's pre-bankruptcy assets, liabilities and respective overall financial position.

14. This firm failed to mark on Schedule C the homestead exemption box to protect with exemption the Plaintiff single most valued asset. The Talarchyk firm's prematurely and ineptly filed a 363 auction sale of the Plaintiff's residence in September 2013.  This sale was withdrawn due to a no show of none of the contacts or activity promised occurred. This miscalculation and ill-informed advice tainted the property value with distress sale implications.

15. The Ozment Merrill firm with attorney Matthew Girardi, Esq. became the attorney of record without ever informing K Brown about this representation on or about October 2013.

16. In the adversary proceeding Rodriquez v. Brown Mathew Girardi met with K Brown to complete an adversary file and provide a defense and answer to the Rodriquez complaint on or about

17. Attorney Girardi, Esq. left Ozment Merrill with no noticed provided to K Brown on or about

18. A new attorney Christopher Salamone, Esq contacted K Brown on Monday before the Friday Trial to suggest reviewing the matter for trial. K Brown called each day to schedule a review for trial preparation and was given Thursday at 4 PM hours before the trial on that Friday. Attorney Salamone, Esq. was not prepared nor informed about the trial defense. He was not an experienced trial attorney with no previous cases being tried at a Hearing anywhere especially a Bankruptcy matter.

19. The Rodriquez v. Brown entire defense file was missing prior to trial and subsequently never found by David Merrill or Ozment Merrill anytime post-trial for use to prepare for an Appeal that the Defendants were retained to stay the verdict.

20. The Rodriquez v. Brown matter was fatally lost from no trial preparation and no trial defense with no witnesses or exhibits resulted in a judgment of $550,000 entered April 2014. Notwithstanding, David Merrill affirmed previous to trial and did so before a witness that the Rodriquez dischargability was a "slam dunk." And post- trial that Judge Kimball failed and errored in his decision that the judgment would win on Appeal and stated such before a witness.

21. In May of 2014, David Merrill inadvertently audible in Court without notice to the Plaintiff pushed another 363 sale an auction for September 2014.

22. Incomprehensibly, this unexplained notice by Merrill to the Court occurred immediately after the Plaintiff had successfully achieved approval of the fourth motion to approve DIP loan financing. A financing that met with the approval of secured creditors to continue to permit the Debtor-in-possession to market the property for its fair market-value ahead of a forced auction. This financing was successful remain current with the outstanding mortgage debt service without threat of foreclosure or adversary proceedings by the secured creditors Bank of America and Paradise Bank to do so at least through January 2015. The grossly negligent announcement by David Merrill placed severe pressure and undue influence upon the prospects to complete a fair market sale.

23. A dual listing agreement was signed by the Plaintiff between Reback Realty and Douglas Elliman Realty on or about June 2014. The Bankruptcy court did not qualify them until on about September 2014 as agents approved by the Bankruptcy court to sell the property.

24. Notwithstanding, the listing agreement was adjusted to account for Merrill the misstating before the Court the timing of the auction date for September 2014. To compensate for this untimely auction, the parties agreed to include a non-traditional reimbursement clause for out of pocket marketing expenses should an auction be prematurely forced ahead of realtor sale. To obtain this listing of a luxury property, the listing agreement obligated the realtors to allocate and spend $20,000 each to market the property.

25. Thus, as a consequence Merrill's faux po caused the listing agreement to conclude that if the property were to be sold pre-maturely at auction. The auction sales proceeds in part after secured creditors were paid would be preferentially allocated to compensate the timing risk for the Realtors to return their marketing expenses.

26. Nearly nine months later the property was auctioned in early April 2015; the realtors several weeks later in April 2014 filed a claim for the reimbursement of marketing expenses. Problematically, the Plan Proponent's Plan provided no provision for the Realtors marketing expenses. Neither Oz Title nor David Merrill as attorney and plan administrator accounted for these expenses as part of the closing statement on the sale. Unbeknownst to the Plaintiff these marketing expenses to sell the property would be accounted for not allocating

monies from the sale proceeds, but would become a claim against the Plaintiff's bankruptcy estate to finally be paid from his retirement assets. Clearly, the monies claimed by the realtors to reimburse marketing expenses should have been directly expensed from the sale of the property.

27. Thus, no sales proceeds were allocated to compensate for the $42,000 in marketing expenses. The claim is being paid by the Plaintiff from his retirement income, IRA and retirement annuities through December 2016.

28. On or about June 2014 unbeknownst to the Plaintiff, Ozment Merrill or David Merrill inadvertently amended the Plaintiff's bankruptcy schedules. This amendment failed to include and list the Plaintiff's previously claimed exemptions for the exempt assets that are the customary and standard exemptions for debtors in a bankruptcy estate. These exemptions are generally considered in an exempt asset status are the retirement annuities, life insurance and IRA. In addition to the Homestead exemption for one's residence.

29. The amended Schedules were material in financial consequences to the Plaintiff.  This oversight became known early August 2015.  This amended schedule irreparably damaged the Plaintiff's financial position and his retirement income soon after the terms found in the divorce marital settlement (MSA) of July 30, 2015 were enforced by the Bankruptcy Court.

30. The Plaintiff's primary asset his residential property was appraised for $11,000,000 in April 2014. Unfortunately, the property was auctioned for only $6,500,000 April 2015.  This auction was approved by the Court to Fisher Auctions, an auction company that was not a favored choice by the Plaintiff. Sheldon Good Company was favored by the Plaintiff over Fisher Auctions. The property met fully the "adequate protection" provisions pursuant to 11 U.S.C. section 361. Exhibit 1

31. On or about September 2014 K Brown terminated the legal representation of Ozment Merrill. First, he had to contend with the Court to delay, postpone or cancel the September auction date. And secondly, the Plaintiff had to awkwardly assuage Ms. Heidi Fineman, the U.S. Bankruptcy Trustee who resolutely objected to the approve the first Amended filing of the Disclosure Statement and Plan of Reorganization filed by Ozment Merrill.

32. The U.S. Trustee on the record declared and complained that "nothing has happened in this after all this time". The U.S. Trustee listed numerous reasons

to deny the Plaintiff's debtor-in-possession Chapter 11 reorganization as improperly filed documents.

33. K Brown, now pro se amended and filed these documents on or about October 2104. The amended filing met with U.S. Trustee approval on all the prior objections except for the marital distribution of assets. The Trustee empathized that such approval would need be determined by including the marital distribution of assets in settling the divorce proceeding.

34. Notwithstanding, Judge Kimball emphasized that a pro se litigant would not be qualified to meet the complexities of concluding a Bankruptcy matter through reorganization and discharge. The judge such matters necessitate that an experience attorney be employed. Once this declaratory statement was made by Judge Kimbal. K Brown contacted several attorneys, but settled on Ozment Merrill. After Drake Ozment and David Merrill profusely promise and agreed to correct the past mistakes and would conscientiously devote their professional attention fully to the Plaintiff's Bankruptcy matter.  Adding a new retainer; sometime October 2014, the Plaintiff reemployed the Ozment Merrill law firm with the personal assurances of Drake Ozment that he would take an active role and interest in the matter.

35. Concurrently in October 2014, Wendy Brown's attorney Bradley Straiberg filed to withdraw the automatic stay and this was approved to withdraw Wendy Brown's protective order to move on the declared comment by the U.S. Trustee for the divorce case to proceed in precedence for obtaining an approved Plan of Reorganization and Disclosure Statement.

36. Inexplicitly, the first notice of Ozment & Merrill's retention for court approval was not filed until on or about December 2014.

37. In December 2014, the Debtor–in-Possession, K Brown was successful to obtain a lender for $6,000,000.  The terms were favorable; a one year loan at 9% annually renewable. Sufficient to pay-off all creditors and to remove the pressure of a distressed auction sale. Attorney Alan Perlman filed on December 9, 2014 for a court approval to present New Wave Loans post-petition financing proposal. This was the Plaintiff's fifth request for DIP post- petition financing.

38. An auction foretells the prospects for a distress- type sale which is not as desirable as the alternative compared to a fair market sale for obtaining a

higher valuation for the combined benefit of Petitioner and for providing a full pay pay-off of creditors.

39. Ozment Merrill negligently failed to support this strategic financing. This financing was material to serving the Plaintiff's best financial interest. Consequently, Attorney Alan Perlman withdrew without notifying or giving an explanation to the Plaintiff the New Wave Loans financing proposal. The Court received this withdrawal filing on January 7, 2015.

40. To avoid the perceived conflict of interests, the Plaintiff moved to have the court approve the employment of Dickenson, Rex, and Sloan. A law firm who specialized in real estate financing and real estate closings; a closing intended for the eventual sale of the property.

41. Unbeknownst to the Plaintiff, Wendy Brown filed as a Plan Proponent a separate Plan of Reorganization and a Disclosure Statement. This plan directly conflicted with that of Plaintiff's plan(s). This plan sought the approval of creditors to discharge the Bankruptcy by replacing the Plaintiff as Debtor-in-possession by liquidating assets from the Schedules filed without any applicable exemptions. This Wendy Brown Plan was filed on December 23, 2014.

42. Not until January 11, 2015 and after the Plaintiff saw on Pacer the filing of the Wendy Brown Plan and proposal for the post-petition financing was withdrawn by Attorney Perlman. Astonished in surprise the Plaintiff never was told or expected that a competing the plan by another Plan Proponent could be filed become controlling. Especially spousal Plan based upon a false "Proof of Claim (POC) #22-1as filed by Wendy Brown. And two, neither was a denial and abandonment of the Bankruptcy Code provisions of "adequate protection" pursuant to U.S.C. 1125 be ignored.

43. Accordingly, astonished and confused, the Plaintiff immediately contacted David Merrill. David Merrill said "not to worry". "We would file our own competing Plan."

44. Although this did not happen on a timely basis, no plan by Ozment Merrill was filed in time to compete with the Wendy Brown plan to liquidate. Thus the Plaintiff's assets were subject to 100% liquidation by a plan administrator who was also his attorney under this adverse plan. Ozment Merrill failed at every occasion to be proactive and failed to cease any inactivity other than be reactive to things as they popped up. Thus with time being of the essence, the

8

Plaintiff again worked to develop his own plan of reorganization and disclosure statement. Under the gun of time the Plaintiff prepared the necessary documents ready to be filed, but wanted to have Ozment Merrill review, edit and do the filing.

45. Albeit nothing happened, a late filing on happened on January 28th of 2015. However, the creditors had their 6 weeks to demure and to accept the Wendy Brown Plan with no competing plan to review.

46. A hearing was set to approve the adverse Wendy Brown Plan Proponent Plans on February 2, 2015. The Plaintiff's Plan was withdrawn a few days later on February 5, 2015 as untimely filed.

47. The Ozment & Merrill law firm had filed the essential Plan of Reorganization and Disclosure Statement three times without ever gaining Court approval for assuring K. Brown a *fresh start reorganization.*

48. The Ozment &Merrill law firm had filed on four occasions to obtain Court's the approval for post-petition financing. The loans were to reorganize and to benefit the Plaintiff as the Debtor-in-possession. The Ozment Merrill law firm chose to ignore the fifth request for post-petition financing. A financing that paid off secured creditors and the time to permit the allowance of a fair market sale of the residence to result in a favorable financial outcome for the Plaintiff.

49. The Plan Proponent was a liquidation plan that called for Plan Administer to procure the Plaintiff's assets to liquidate them then proceed to auction the primary asset the Plaintiff's residence to pay 100% of the POC creditors.

50. Fisher Auction developed an odious marketing strategy that recklessly chose to use disparage and to berate the Plaintiff by using his notoriety in the media of Local and National Press to publicize the sale.

51. K Brown's had the ignoble notoriety of an unfavorable SEC action that was found against him in 2007. This vilifying marketing strategy was a ploy to draw attention to attract bidders to the auction. However, the auction was not an auction when only one bidder shows up in April 2015.

52. This bidder actually originated from K Brown's contact, architect Douglas Root. The smear tactics failed to produce bidders, but succeeded only to discredit the Plaintiff and his family.

53. After protesting. The Plaintiff agreed to use Oz Title to close the sale. Ozment & Merrill argued to do the closing of the sale in exchange to make some very

specific promises and assurances in legal fees. Unwillingly, the Dickenson law firm was dropped from performing the closing in April 2015.

54. A 39 year marriage was ended between the Plaintiff and his spouse Wendy Brown. After many threats by opposing Counsel Jason Marks that if the Plaintiff did not agree to sign a disproportionate MSA that K Brown after 39 years of marriage and 50 years working that he would leave the marriage with ZERO.

55. The closing failed to expense the $42,000 in marketing expense. Ozment Merrill, Oz title and David Merrill ignored and neglected to include these marketing expenses as being properly deducted from the sale proceeds.

56. At closing, David Merrill, the attorney later disclosed that he incurred substantial legal expenses, but the legal expenses incurred for the closing in excess of $78,000 as claimed Merrill, P.A. were also not expensed from the sale proceeds at the closing.

57. These expenses of the marketing expenses and the legal fees were charged against the Plaintiff taken by Merrill functioning as Plan Administrator from K Brown MSA his sale proceeds of $100,000 and from $144,000 remaining his IRA in October 2015.

58. None of Merrill's law firms that were parties to this bankruptcy ever neither provided monthly billing statements nor were there retainer agreements accurately provided to explain the fees and duties or obligations of the attorneys.

59. On or about November 2015, $244,000 was taken from the sale proceeds of the Plaintiff's residence and $144,000 from his IRA. These monies were taken to pay the unsecured creditors and the unadvised attorney fees. These monies were disbursed by court order. The court ordered these payments be made to satisfy creditors from the approved Plan Proponent plan of liquidation. The remaining balance of $7000 in the escrow account was used to pay towards the $42,000 claim by the Realtors marketing expenses in January 2016.

60. There was no inquiry, investigation or negotiated settlements attempted by the Ozment & Merrill law firm to mitigate any of the ten creditors about their proof of claims.

61. The MSA was signed with the coercion and duress to leave 39 year marriage at age 68 years old with ZERO. In emails and before witnesses in July 2015, David Merrill dogmatically confirmed that the Plaintiff's retirement annuities

and IRA were "absolutely" secure from attachment. Exhibit This was diametrically contradicted and proved to be not correct.

62. The Ozment & Merrill firm failed to include the Plaintiff's annuities and IRA as EXEMPT assets on Schedule C. Exhibit 2

63. David Merrill at Ozment & Merrill and Merrill, P.A. over a three years  failed to investigate or determine the accuracy of POC 22 and 23 for $2,040,876 and $6,731,437 from Wendy Brown's dissipation claim and Violet Werner as Trustee claim for a promissory note. Neither of which were in fact accurate, but with objection were **overruled** by the court thus remain outstanding and collectible. Attorney Merrill without conducting the due diligence to investigate the authenticity and the correctness of the claims POC 22 and 23. As a consequence, of fearing to get ZERO, the Plaintiff was forced to sign a disproportionate MSA which conceded over $1,500,000 from his estate.

64. As a debtor, the Plaintiff had an additional two mortgages. These outstanding obligations received no contact or negotiation by Merrill while in Chapter 11 to perform a cost saving loan modification. The Plaintiff finally succeeded in September 2016 on his own to obtain a cost saving loan modification with Seterus, Inc. but still continues to negotiate with Nationstar Mortgage the other mortgagee.

65. The Ozment & Merrill law firm failed to investigate and review the Plaintiff litigations for collectability or legal sufficiency to provide as Contingent Assets; monies potentially benefiting the bankruptcy estate.

66. These litigations included:

Brown v. Securities and Exchange Commission case no:   this was a matter to attempt to **acquit** the Plaintiff for what was allegedly a falsely achieved judgment by the SEC on December 19, 2007.
Brown v. Gardiner Koch and Weisbaum case no:   This matter is a malpractice claim to vindicate the Plaintiff for their failure to conduct a proper and appropriate defense for SEC judgment above.
Brown v. Ameritrade arbitration case no:   This matter was an attempt to exonerate the Plaintiff from the SEC judgment by proving the matter was also equally concealed from a multi-billion dollar securities firm.
Brown v. Cimilluca case no: Cimilluca was the Plaintiff's employee that did 100% of the trading the Plaintiff was found culpable and liable for by the SEC.
Carson v. Brown counterclaim by Brown case no: This was a collection case for $250,000 that the court already found due and owing by Carson to the Plaintiff that a needed a judgment be filed. The case was dismissed for lack of prosecution.
Brown v. Citizens Property Ins. Case no: 06-20906(02) this is case to collect damages for hurricane repairs.

67. The David Merrill firm(s) also failed to notify the Irving H. Picard, Trustee for the Liquidation of the Benard L. Madoff Investment Securities , LLC v. Ken-

Wen FLP leaving the Plaintiff to engage in a legal dispute over a default judgment potentially for $4million dollars.

68. The MSA signed on July 30, 2015 promised $100,000 from the Sales proceeds, two annuities totaling $650,000 and $150,000 or so from the IRA be distributed as the marital assets to the Plaintiff with remainder of the "net sales proceeds" of $473,000 to Wendy Brown. No mention was made or offered by David Merrill about payments to unsecured creditors, attorney fees or $42,000 in monies to Realtors to be consumed in the Bankruptcy Court. The result was no monies were available in the Bankruptcy order to go to the Plaintiff. Meanwhile, the retirement annuities remain subject to a court order to compensate potential creditors claim post the closing of the bankruptcy matter in May of 2016. In an email David Merrill of Merrill P.A. stated "Ken can have the $100,000 in a week." And stated, "Judge Kimball does not like you and already shown you that he will rule against you." "Take the MSA."

69. The bankruptcy matter had material consequences on the MSA which adversely and severely harmed the Plaintiff irreparably.

70. The nature of the case is the material breach of fiduciary duty to complete accurately Schedule C for the Homestead Exemption, the amended Schedule C for the Exemption to the retirement annuities and the IRA. Exhibit 3

71. The nature of the case is the material breach of fiduciary duty to file an approval Plan of Reorganization and Disclosure Statement.

72. The nature of the case is the material breach of fiduciary duty to conscientiously procure a timely refinancing to achieve an open market sale instead of the quick auction sale of a greater valued residence.

73. The nature of the case is the material breach of fiduciary duty to provide accurate and correct information in an informed understanding of legal matters and legal rights to form of explanations and informed consent on the adverse consequences of not acting with the skill, prudence and diligence necessary in completing Chapter 11 reorganization. This flawed advice and lack of performance to provide an appropriate standard of care wasted over $2,000,000 the Plaintiff's assets unnecessarily.

## GENERAL ALLEGATIONS

74. These Defendants collectively and individually failed the Plaintiff to properly represent his best interests to avoid those consequences that resulted in the legal obligations that caused substantial financial harm upon the Plaintiff.

75. The legal protections that necessities the solutions afforded in the filing of a Chapter 11 debtor-in-possession proceeding failed to provide the *fresh start*

that was promised. In accordance with the protections provided the individual in bankruptcy reorganization and by the predetermined rules of the U.S. Bankruptcy for Chapter 11 reorganization. The defendant(s) were well advised by the Plaintiff about all of his financial circumstances. Especially, the Plaintiff informed the defendant(s) had a valuable single asset bankruptcy that included other exempt assets. However, these defendant(s) failed and carelessly neglected to protect the Plaintiff with the rules afforded to the exemptions in a chapter 11 bankruptcy proceeding.

76. A $25,000 retainer and or other fees that were paid for this legal representation. These defendant(s) a lawyer responsibility to be competent, prompt and diligent. There were appropriately delineated retainer agreements or monthly statements detailing billings which engaged in conduct involving dishonesty, fraud, deceit and misrepresentation. The plaintiff contends that the bankruptcy filed by the defendant(s) was conducted solely for their enrichment.

77. There were mistakes most if not all the billings by the defendant(s).

78. David Merrill beguilingly led me to believe the $25,000 cost was essentially the total cost for what was to be a speedy single asset bankruptcy. There no discussion about additional monies being needed or any estimate of the money that would be needed to complete the proceeding through discharge.

79. Since the financial troubles plaguing the Plaintiff centered mostly upon salvaging as much of the value of the Plaintiff's Manalapan home and to stay a non- collateralized judgment by creditor Frank Rodriquez et al. When all other creditors were either being satisfied or not pressuring the Plaintiff.

80. Thus, the bankruptcy was first to provide a solution to work something out with Frank Rodriquez. And his judgment for $489,343.65. Rodriquez threatened to obtain a sheriff's levy to sell the property for benefit of Rodriquez et al on or about February 17, 2013.

81. The Defendant(s) Talarchyk & Merrill filed the Chapter 11 without first contacting Rodriquez as promised in pre-filing effort to resolve his dispute and then K.Brown was denied a promised meeting to discuss further the practical implications and details what a voluntary Chapter 11 could accomplish.

82. The Plaintiff was surprised to learn about the filing by his phone to David Merrill. Merrill said that the Chapter 11 petition had been filed prior to this promised final discussion to review their recommendations and to be better informed in understanding the possible outcomes. The case was filed

coincidentally the Plaintiff closing on a vehicle lease with Mercedes-Benz. Knowing the results that have occurred Chapter 11 would not have been filed.

83. I provided Talarchyk & Merrill the financial details and records needed to complete the petition and the various schedules. The Defendants in common errors failed to check the homestead exemption box for protecting the Plaintiff's residence, his most significant asset. The homestead for his residence was left non-exempt. This asset was listed for $9.5 million but appraised at $11 million dollars a year later. Yet, the Talarchyk law firm immediately insisted to go into an auction pursuant to 11 U.S.C. 363 & 364. Ms. Talarchyk boosted about her experience and numerous hedge fund contacts would rush to participate and rush to grab this asset sale at auction. This advice was bogus no replies were received as was not promoted properly. This advice was focused to compensate the lawyers more than looking out for client.

84. Again in May 2014, David Merrill of Ozment-Merrill without notice revised and filed an amended Summary of Schedules that negligently failed to include the exempt assets status for the exemptions for an IRA and the $1.7 million dollars of retirement annuities owned by the Plaintiff. This exemption status ignored on the Plaintiff's residence and deleted from exempt status the annuities and Ira provided in Florida, but now were exposed and left in a non-exempt subject to creditors. This severely prejudiced and continues to prejudice the Plaintiff financially.

85. As a result of this negligence and bad advice. The Plaintiff's home was sold at auction without any protective exemption proceeds remaining for the Plaintiff to acquire a new homestead and caused the annuities and IRA to be unnecessarily exposed to creditors. Consequently, the Plaintiff received no benefit from his IRA after 40 years of accumulations while the sale proceeds of his residence went to creditors. Thus, the remaining annuities are still subject to liens.

86. The Plaintiff was not ever advised of these financial vulnerabilities at any time during this voluntary Chapter 11 proceeding. It was not until August 2015 before the Plaintiff became aware of how expose to creditors these common errors would cause financial injury.

87. In August 2015, the Plan Proponent was given the Court's order to force the liquidations to pay creditors and to pay David Merrill his undisclosed and ill-advised legal fees.

88. The July 31, 2015 order composed by Plan Administrator, David Merrill in less than 24 hours after the oppressive and ill-advised MSA was signed.

89. This order was never advanced in discussion by David Merrill, nor was any informed understanding given prior to MSA being signed. The Plaintiff was completely blindsided with the amended post-petition schedules being so recklessly detrimental to the Plaintiff.

90. Oz Title, LLC. of Ozment & Merrill Pa resulted in an administrative conflict of interest. The Plaintiff had hired Dickinson Rex & Sloan to administer the legal, the closing and title insurance. Yet, Drake Ozment of Ozment & Merrill protested promising that certain concessions would be made in legal fees and the sale would be charged for a flat fee. Merrill subsequently billed excessive fees that were negligently excluded from being expensed in the sales proceeds, but were instead deducted from the Plaintiff's retirement and divorce settlement assets. This irretrievably harmed the Plaintiff financially.

91. The following further details the Defendant(s) continuous breaches, fraudulent misrepresentations and the common errors in the egregiously negligent representation by the Defendants that resulted in significant financial harm and economic loss to the Plaintiff. This summary enumerates these breaches that include but are not limited to the following:

a. No preparedness was made for the Realtors claim for marketing expenses from a listing agreement ignored by Merrill in the amount of $42,000 that is being paid from the Plaintiff's retirement income sources instead of being expense from the sale proceeds of the residence.

b. Merrill failed to timely communicate and return phone calls to Attorney Pearlman to pursue the completion of refinancing rather the auction sale of the residence.

c. Merrill failed to inform the Plaintiff of the Plan Proponent's plan on December 23, 2014 until January 11, 2015. Thus failed to timely file a competing plan of reorganization and disclosure statement for the Plaintiff. This failure caused the Plaintiff to no longer retain the promised status of a voluntary debtor-in-possession chapter 11.

15

d. An Order granting the Plan Proponent "Emergency Motion to Approve for Conditional Approval of Disclosure Statement and to Combine Final Hearing on Approval of the Disclosure Statement with the Hearing on Confirmation of the Plan: Ex Parte was ordered January 6, 2015.

e. Without an immediately filed competitive plan. The creditors had no other plan to approve. The Plaintiff gained the support of the secured creditors to review a competitively filed plan, but the Defendants(s) made no effort to produce a plan.

f. The competitive plans were produced on January 22 and 23rd by an unskilled debtor, the Plaintiff. Ozment Merrill did review and file the plans, but filed the plans January 29, 2015 just days before the final vote of creditors was counted. The various class of creditors was scheduled on February 2, 2015 for the approval Plan Proponent's Plan, thus with no time and no chance for approval the plaintiff's Third Plan of Reorganization and Disclosure statement was withdrawn after the court approved the Wendy Brown plan on February 5, 2015.

g. In Court in May 2014, David Merrill mistakenly scheduled an auction sale for September 2014 just weeks after the Plaintiff receive post-petition financing to delay and postpone the auction to January 2015. A Schedule of the payments to secure creditors provided the compensation for the time extension. Exhibit

h. David Merrill failed to heed the demand of the Plaintiff to announce in May 2014 that the 363 auction sale to be scheduled for after December 2014. He instead recklessly and carelessly stated said sale would be September 2014. This foul-up sabotage and put the Plaintiff at risk for additional $600,000 in assets to gain only three months of selling time to sell or refinance the house instead of 8 months. The threat of auction kept would be buyers away.

i. Merrill consistently misrepresented bankruptcy law and the predetermined bankruptcy custom in a failed number successive filing(s) to achieve a Disclosure Statement and Reorganization Plan more favorable to the Plaintiff. This is clearly a malpractice committed upon his client.

j. In September 2014, Bankruptcy Trustee Ms. Heidi Fineman stated in court that after 18 months nothing has been done in this case thus far and filed a notice of over 19 objections in a rejection to Merrill's Disclosure Statement and Plan of Reorganization. This opened the Court to deny the Ozment Merrill Plans and Wendy Brown's attorney to take control of what was a voluntary Chapter 11.

k.  Ozment & Merrill gave many assurances that all legal matters would be diligently attended to after being retained a second time in October 2014. The Plaintiff agreed for added legal fees to re-retain Ozment-Merrill after being terminated for failing to prepare and conduct a deserved standard of care in legal representation.

l.  Especially in regards to failure to communicate with the Realtors to affix a suitable listing agreement for the Bankruptcy proceeding, the "slam dunk" failure in trial to discharge the Rodriquez claim and the faux po that truncated the time for an unwanted auction from September to sell or refinance the residence.

m.  The Ozment Merrill firm was remiss as it failed to have David Merrill actively participate and attend to the Plaintiff's bankruptcy matter prior to Merrill's application to be employed on December 2, 2014.  The month of December moved very quickly to have many important legal issues occurring that proceeded to negatively change the outcome the case.

n.  Ozment & Merrill had Attorney Girardi employed and $10,000 retainer paid defend the Plaintiff in the Rodriquez discharge ability case.

o.  No preparation was conducted for Hearing on the half million dollar Rodriquez's claim. Attorney Girardi had left the firm without any notice given to K Brown.

p.  Just days before the hearing a new, unprepared, and completely inexperience attorney, Christopher P. Salamone, Esq, was appointed to conduct the Hearing.

q.  Meanwhile, the file was lost containing all the exhibits, expert witness testimony and documents for a defense were lost until the second day of the trial.  Some of the documents were hasty prepared and were delivered to the court at 1pm, but Attorney Merrill chose not enter or use them.

r.  Ozment & Merrill had scheduled Attorney Salamone a few days before trial to review the case with the Plaintiff.  It was 4 pm the night before the Hearing for an hour that Attorney Salamone summon the Plaintiff for cursory one hour review.

s.  Confused and protesting, the Plaintiff confronted Merrill with grave concern and requested Merrill to attend the Hearing. At which time Merrill stated, "Ken, don't worry this Rodriquez case is a slam dunk. You win!" The malpractice resulted in $550,000 be taken from the sale proceeds of the house.

17

t.  Merrill stated that Judge Kimbal erred, and the decision had a viable appeal after fees were paid the appeal was dropped in late 2014.

u.  In emails and in discussions, Merrill was consistently asked by me what the risk to the annuities was and IRA did the bankruptcy entail. Merrill repeatedly advises no worry their exempt.

v.  There were 10 proofs of claims (POC) filed by creditors to the Bankruptcy. None of these creditors were given calls or notices to work-out any settlements. Thus no mitigation of claims pursued.

w.  There were two mortgages involved neither mortgagee was contacted to work out a modification settlement. Neither was the Plaintiff ever provided any of the communications, statements or documents that the mortgagees forwarded to David Merrill the attorney of record. Thus no mitigations of mortgage interest or payments were pursued.

x.  The Plan Proponent was also granted a coercive leverage adversely positioned the Plaintiff to irreconcilably agree to an unequal distribution in the Marital Settlement Agreement (MSA).

y.  Merrill misrepresented the legal position of the exempt status of the annuities and IRA and the sales proceeds to the residence that were taken in creditor liens and attorney fees after being promised in a distribution in the MSA of $250,000.

z.  Merrill failed either by gross negligence or ineptitude of inaction to not investigate the incorrect or bogus claims POC #22 and 23 filed for $2 million dissipation claim by Wendy Brown in the divorce and as Plan Proponent, and Violet Werner as Trustee promissory note for $6.2million. as a consequence the Plaintiff was forced to agree to a MSA that was disproportionately unequal by over $1,500,000. The threats from the opposing divorce Counsel Jason Marks made the intimidations of not accepting the MSA or getting ZERO. It was the ill-fate of the Plaintiff for Merrill to advise in front a witness that Judge Kimbal "does not like you, he will rule against you given opportunity to do so." "The adverse decision in the Rodriquez case tainted Judge Kimbal's disposition of you."

aa. The continuous gross negligence and breach of duty by Merrill directly caused the loss of the Rodriquez case, the forced auction, and the forced settlement reached in the MSA. Each severely harmed the Plaintiff economically and financially in damages exceeding $2 million.

bb. This breach of fiduciary duty was deliberate and intentional. The motivation was to auction the residence quickly. This was a quicker method of collecting legal fees. The legal fees were a greater priority to that over serving the best interests of the Plaintiff client.

cc. The U.S. Bankruptcy Court Judge Paul Hyman, Jr. on the record in another matter reprimanded David Merrill stating, *"You're committing malpractice with your clients. If one of them come in here, I'm going to tell them to sue you. And I will put on the record, you are committing malpractice with clients."* Exhibit 4

## LEGAL ARGUMENT
## COUNT I
## CLAIM AGAINST DAVID MERRILL AND DAVID MERRILL AS PRINCIPAL AND AGENT FOR TALARCHYK & MERRILL OZMENT & MERRILL AND MERRILL P.A. FOR LEGAL MALPRACTICE

92. The Plaintiff realleges and adopts all of the allegations set forth in paragraphs 1 through 92 above.

93. Pre-petition the legal engagement by David Merrill and Talarchyk Merrill failed to adequately inform the Plaintiff of any understanding the adverse consequences of the negligent completion, remissive or untimely filings of standard Bankruptcy schedules, forms, court documents and other submittals to the court. This violating Florida's Rules of Professional conduct has caused undue financial harm to the Plaintiff.

94. David Merrill filed the bankruptcy before informing the Plaintiff that it was being filed and prior to the ministerial explanations of the consequences of an non-promoted 363 sale, an unapproved plan of reorganization and disclosure statement, failure to claim exemptions of assets from creditors, a remaining debt payment plan to reorganize post-petition creditors, failure to address adversary cases, legal actions for dischargability of secured or unsecured claims, and the perfunctorily negotiating settlements or prospective refinancing of DIP post-petition financing. This violating Florida's Rules of Professional Conduct has caused undue financial harm to the Plaintiff.

95. David Merrill at Talarchyk Merrill pre-petition filed the bankruptcy and then was given two full file boxes of the pertinent financial matters related to the Plaintiff that went virtually unattended too in careless and negligent fashion.

19

The Defendants' should have by the exercise of due diligence and skill review and analyze most, of if not all these documents in the investigative stage be indexed or categorized for a properly prepared case. These financial records provided the circumstances that dictated what was going to happen in the case the failure to inform and to communicate to the Plaintiff inevitably led to the failure to navigate the case to achieve through proper actions not the inactions a responsible desired result. This violates the Florida's Rules of Professional Conduct that has caused undue financial harm to the Plaintiff.

96. David Merrill failed to contact or attempt to settle or to resolve pre-petition the Rodriquez unsecured claim $500,000. The filing was done without notifying the Plaintiff and without contacting Rodriquez the immediate concern forming the inquiry of discussing a Chapter 11was also not done. No informed consent violates a Lawyers Responsibilities that has caused financial harm to the Plaintiff.

97. David Merrill and Ozment Merrill failed to prepare a defense and ended up losing the Rodriquez defense file assembled to defend the Rodriquez v. Brown case. The file included the exhibits and expert witness testimony needed to provide a defense. Attorney Matthew Girardi, Esq of Ozment Merrill was retained to try the case, but never noticed the Plaintiff that he was replaced or not the attorney to defend the case. Christopher Salamone, Esq. first time, not familiar and inexperience tried the case without preparation. The Ozment Merrill law firm in consideration of their employment undertook and agreed to represent the Plaintiff during the course of the Bankruptcy to act in a proper, skillful and diligent manner as attorneys for the Plaintiff.

98. David Merrill and Talarchyk Merrill failed to claim the homestead exemption on Schedule C. This common error had caused undue financial harm to the Plaintiff.

99. David Merrill and Ozment Merrill amended Schedule C without notice and failed to claim the exemptions for the retirement annuities and IRA. The above was assured that the equity in the home and these exempt assets would be protected under the bankruptcy laws. This common error(s) and inaction(s) was so negligent that they did not properly prepare for the case and or all practicable purpose , did not put on a credible and/or a reasonable defense or outcome for the Plaintiff.

100. Accordingly as stated above, David Merrill and Ozment Merrill failed to have a Plan of Reorganization and Disclosure statement approved.

101. Accordingly as above, David Merrill and Ozment Merrill failed to make timely contacts with the Real Estate Listing Agents, Attorney Alan Perlman for New Wave Loan, Attorney Blaine Dickenson, Attorney Laddy Luna Perez of Bank America, Attorney Rappaport of Paradise Bank, Attorney Robert Gershman, Attorney Marie Calla Quartell and others to review various manners during the litigation of the case. This lack of diligence has caused material financial harm to the Plaintiff.

102. Accordingly as above, David Merrill and Ozment Merrill failed to attempt to investigate and mitigate creditor claims. This lack of diligence caused undue financial harm to the Plaintiff.

103. Accordingly as stated above, David Merrill and Ozment Merrill failed to mitigate loan expenses in two mortgage modifications and pursue mortgagee contacts such as Kenneth Lockwood of Suntrust Mortgage. This lack of diligence has caused substantial financial harm to the Plaintiff.

104. Accordingly as stated above, David Merrill and Ozment Merrill were re-employed on October 17, 2014, but were remiss to file for court approval until December 2, 2104. This delay to represent the Plaintiff was the proximate cause to encourage the takeover of the bankruptcy matter for the better benefit to Wendy Brown which caused substantial financial harm to the Plaintiff.

105. Accordingly as stated above, David Merrill and Ozment Merrill failed to inform the Plaintiff of Wendy Brown Plan Proponent liquidation plan to takeover of the debtor-in-possession plan to reorganize the voluntary Chapter 11. This negligence caused substantial financial harm to the Plaintiff.

106. Accordingly as stated above, David Merrill failed to advise the ramifications of his advice to take a lopsidedly disproportionate MSA distribution left the Plaintiff $42,000 in debt in November 2015.

107. Accordingly as stated above, David Merrill failed throughout the case failed to return numerous emails and telephone calls to the Plaintiff and others. In particular, David Merrill failed to specifically to return calls to advise the Plaintiff on the date to leave the auctioned sold residence. In haste, the Plaintiff removed a large crystal chandelier that Judge Kimbal mockingly chided on the record the Plaintiff's creditability. Had Merrill returned the phone calls the chandelier would have been removed. The chandelier was return and installed.

This is conduct continued through- out the bankruptcy is irresponsible and a matter violating the ethics of the Florida Bar.

108. Accordingly as stated above, David Merrill and Ozment Merrill failed to encourage a competitive review of other auctioneers other than Fisher Auctions. For instance, Craig Post of Sheldon Good & Company had a better proposal that was preferable over Fisher Auctions, but was denied a timely opportunity to present the better proposal to auction the plaintiff's residence albeit against his client's best interests.

109. David Merrill and Ozment Merrill failed to investigate and challenge the legitimacy of Wendy Brown's **bogus** *lis pendens*. This was so negligent that they could not properly prepare the Plan of Reorganization and Disclosure Statement without a determination of the Wendy Brown divorce claims. This for all practicable purpose prevented and coerced the Plaintiff a credible MSA and resulted in the New Wave Loan $6,000,000 loan being withdrawn. This failure to use the ordinary skill resulted in substantial financial harm to the Plaintiff.

110. Accordingly as stated above, Attorney Alan Perlman Notice of Filing of Motion to obtain credit for New Wave Loans filed 12/12/14, but was withdrawn without communication or notice by David Merrill to the Plaintiff. Attorney Perlman withdrew the $6,000,000 loan document filed by New Wave Loans as it was discovered that they were discouraged by the little or no support over the negligence of David Merrill on January 7, 2015. This post-petition financing was material and substantial to the Plaintiff's financial position.

    WHEREFORE, the Plaintiff, KENNETH W. BROWN demand a judgment against Defendants, Talarchyk Merrill, Ozment Merrill, Merrill, P.A.and individually against David Merrill, Tina Talarchyk and Drake Ozment jointly and severely, for damages in excess of $2,000,000, including interest, legal fees, and court costs.

### COUNT 11
### CLAIM AGAINST THE DEFENDANTS FOR BREACH OF FIDUCIARY DUTY

111. Plaintiff reallege paragraphs 1 through 111 above as set forth fully herein. This action is for continuous legal malpractice displayed during the bankruptcy

proceeding from February 14, 2013 through May 20, 2016 and continuing if necessary through discharged.

112. At all relevant times from the inception of the Bankruptcy, a fiduciary and attorney client relationship existed between the Plaintiff and the Defendant(s) individually and as an agents and principals of the Corporate entities.

113. At all relevant times from inception of the Bankruptcy as attorneys for the Plaintiff, owed the Plaintiff the fiduciary duties of loyalty and of care to exercise the degree of care and skill as would be exercised by a reasonably attorney practicing Bankruptcy law in South Florida under the same or similar circumstances.

114. The Defendant(s) at all times relevant undertook to represent the Plaintiff in the Bankruptcy case and ensure that the Plaintiff's interests were protected.

115. The Plaintiff placed his trust and confidence in the Defendant(s) believing at all material times that the Defendant(s) were acting in his best interests and would act with the requisite degree of care and skill as would be exercised by a reasonably skilled attorney's practicing Bankruptcy law in the South Florida area under the same or similar circumstances.

116. The Defendant(s) breached their fiduciary duties owed to the Plaintiff and their reasonable duty as Bankruptcy attorneys as stated above and including but limited to:

a) Failed to act with the necessary experience and skill to effectively and properly handle the Plaintiff's bankruptcy prudently to result in an outcome substantially better for the debtor (Plaintiff) but for the Defendant(s) actions.

b) Negligently failed to review, analyze and investigate most, if not all the documents to ameliorate or mitigate circumstances for an alternative reality of a better outcome had the Defendant(s) not breached their professional duties.

c) Negligently failed to organize the documents, the filings and scheduling of matters for protecting the Debtors assets and the discharging debts.

d) While rendering legal services to the Plaintiff, the Defendant(s) failed to exercise reasonable skill, care and diligence to communicate to or to advise correctly various outcomes and promises of outcomes than what actually resulted. For instance, David Merrill stated the Rodriquez case was "a slam dunk" for Defendant or the Realtors claim for marketing expenses; he states "don't worry you win." The legal matters were stated incorrectly.

e) The Defendant(s) failed to exercise the special skill and knowledge required in the practice of bankruptcy law to provide advice when requested, or advise caution about those circumstances that might result in adverse consequences if the advice was not considered. And failed to volunteer opinions when necessary to further the Plaintiff's objectives.

f) The Defendant(s) never advised, predicted, or forewarned the Plaintiff that his circumstances would dictate that the outcome of the case would leave him without his IRA, $42,000 in monies debt owed to realtors, no creditor protection for his annuities or any cash remaining to replace his residence. The Defendant(s) breaches precipitated added financial hardships unto the Plaintiff.

g) The Defendant(s) utterly failed to prepare or provide proper preparation for adversary cases including the Rodriquez trial or to pursue Plaintiff's contingency Plaintiff litigations as stated above.

117. The Plaintiff has suffered damages directly and proximately caused by the Defendant(s) breaches of Fiduciary duties including but not limited to (a) the funds that the Plaintiff paid, (b) or were paid on his behalf, (c) relating to the Court orders directing payments, (d) monies paid to claims that could have been mitigated by Defendant's acting properly, (e) loss real economic value of assets lost. (f) loss of monies for failure to mitigate mortgage modifications, (g) loss of Plaintiff judgment from Robert Carson, (h) the loss Plaintiff's unequal distribution from MSA, and (i) the legal fees associated with the bankruptcy and matters related to the bankruptcy filings.

WHEREFORE, Plaintiff, KENNETH W. BROWN demand a judgment for money damages against Defendant(s) jointly and severally, including interest, costs, and any other relief in the Plaintiff's favor as the Court deems just and proper.

COUNT 111

CONSTRUCTIVE FRAUD

(Against David Merrill and Ozment Merrill)

118. Plaintiff reallege paragraphs 1 through 118 above as if set forth herein.

119. This is an action for Constructive Fraud against Defendant(s) David Merrill and Ozment Merrill.

120. At all relevant times, a fiduciary and attorney client relationship existed between the Plaintiff and the Defendants.

121.  The defendant(s) owed the Plaintiff fiduciary duties and were required to act honestly and in good faith with due regard for the Plaintiff and his interests and to avoid misconduct which would injure or be detrimental to the Plaintiff.

122.  The Defendants abused the fiduciary and attorney client relationship with the Plaintiff to misrepresent and conceal material facts and otherwise took an improper advantage of the relationship at the Plaintiff's expense.

123.  Specifically, Ozment Merrill and David Merrill's misconduct is as follows: (a) intentionally misrepresented the trial preparation that Rodriquez was "a slam dunk", (b) intentionally and deliberately did not tell the Plaintiff that Matthew Girardi left the firm and no attorney was prepared to represent the Rodriquez case with the stakes being over $500,000, (c) recklessly and in gross negligence failed to protect the Plaintiff 's exempt assets by carelessly not filing accurate an Schedule C, (d) intentionally and deliberately misrepresented the correct legal understanding of the law to succeed ahead of the Wendy Brown takeover of the role of Plan Proponent, (e) intentionally and deliberately concealed the result that the Plaintiff's IRA, annuities and home equity would be disbursed to pay unsecured creditor and legal fees, (f) intentionally and deliberately ignored the expense adjustments on the closing statement for closing the sale of the Plaintiffs residence for legal fees and marketing expenses, (g) intentionally and deliberately misrepresented the Rodriquez appeal that Judge Kimball committed "judicial error" to overturn the $550,000 judgment, (h) intentionally and deliberately misrepresented that the Plaintiff had a strong case to prevail and expect to prevail against various creditor claims and would emerge with a fresh start voluntary chapter 11 reorganization, (i) intentionally and deliberately misrepresented the closing of the residence with Oz Title was not a conflict of interest, and intentionally and deliberately concealed that their inaction and poor preparation would not recklessly damage the Plaintiff's successful outcome to emerge bankruptcy with a favorable discharge.

124.  David Merrilll and Ozment Merrill's actions were done in bad faith and constituted willful misconduct and resulted in a committed constructive fraud.

125.  The Plaintiff has suffered damages directly and proximately caused by David Merrill and Ozment Merrill's misconduct and constructive fraud.

WHEREFORE, Plaintiff, KENNETH W. BROWN demand judgment for money damage against the Defendants David Merrill and Ozment Merrill,

Merrill P.A. jointly and severally, including interest, costs, and such other relief in the Plaintiff's favor as the Court deems just and proper.

COUNT IV

FRAUDULENT MISREPRESENTATION

(Against David Merrill, Talarchyk Merrill, Ozment Merrill, Merrill P.A.)

126. Plaintiff reallege paragraphs 1 through 126 above as if fully set forth herein.

127. This is an action for Fraudulent Misrepresentation against Defendants David Merrill and Ozment Merrill.

128. David Merrill made false statements to Plaintiff. Specifically, David Merrill as agent and on behalf of Talarchyk Merrill, Ozment Merrill, and Merrill P.A., intentionally misrepresented (a) at meeting he had the proper experience and skill to effectively and properly represent completely the Chapter 11 case for initial retainer of $25,000 that this consideration in legal fees would generally be sufficient through discharge, (b) intentionally and deliberately concealed the breakup and fall-out between Talarchyk Merrill just a couple weeks after they were retained, (c) Intentionally and deliberately Drake Ozment referred David Merrill fully knowing that Ozment Merrill would survive the transfer of the Plaintiff's case, (d) Merrill knew the statements made about how the Plaintiff's voluntary Chapter 11 would prevail in a financially successful outcome to protect and preserve assets to still favorably discharge debts because he possessed an above average professional skill, diligence and knowledge fully knowing these statements were false when made, (e) Merrill intended that the false statements induce the Plaintiff to act upon them, including that the Plaintiff hire him and to continue over with his successor firms to provide the legal representation with the payments of additional retainer fees to Ozment Merrill.

129. David Merrill made false statements that the Plan of Reorganization and Disclosure Statement and the First Amended Plan of Reorganization and Disclosure Statement would prevail forward to Confirmation and eventual Discharge.

130. Merrill knew that the statements were false when made.

131. Merrill intended that the false statements induce the Plaintiff to act on them to, including employ him and Ozment Merrill as counsel to continue to employ them as counsel forward to Confirmation and Discharge.

132.     David Merrill made false statements that the Rodriquez dischargeability case was "a slam dunk," or the Plaintiff to prevail without a liability of a $550,000 judgment.

133.     Merrill knew that the statements were false when made.

134.  Merrill intended that the false statements induce the Plaintiff to act on them, pay an additional $10,000 retainer, including employ him and Ozment Merrill as counsel and to continue to employ Ozment Merrill forward to Confirmation and Discharge.

135.  David Merrill made false statements the Manalapan residence was to be auctioned in September 2014 weeks after the fourth request for post-petition financing was approved for $500,000. The auction was a false statement and misrepresented by Merrill in the legal necessity and prospects to favorably prevail in financial benefit to the Plaintiff.

136.  Merrill knew that the statements were false when made.

137.  Merrill intended the false statements induce the Plaintiff to act to borrow and an additional $600,000 in assets at risk with the expectation that an auction was to be cancelled or at delayed until January 2015 including to employ him and Ozment Merrill as counsel to continue forward to Confirmation and Discharge.

138.  David Merrill made false statements that the Wendy Brown Plan Proponent takeover was challengeable and her takeover be overturned by speedy and effective legal skill in filing the Plaintiff's amended Plans.

139.  Merrill knew that the statements were false when made.

140.  Merrill intended the false statements induce the Plaintiff to act to do his legal work to edit and to rewrite the Plans for creditor and court approval to remain Debtor-in-Possession, including continuing to employ him and Ozment Merrill as counsel of record.

141.  David Merrill made false statements and concealed material facts that the MSA agreement was a good or best settlement to accept it because the annuities were "absolutely" protected and $100,000 would be released to the Plaintiff within a week.

142.  Merrill knew that the statements were false when made.

143.  Merrill intended that the false statements induce the Plaintiff to accept the Marital Settlement Agreement (MSA) to severe detriment to the Plaintiff by concealing legal fees and liquidations to pay unsecured creditors from the Plaintiff's IRA and home equity proceeds.

144. The Plaintiff suffered substantial damages directly and proximately caused by Merrill and Ozment Merrill's fraud.

145. Further, the actions of Ozment Merrill and David Merrill were intentional, willful, wanton, and malicious and performed in a reckless disregard to prejudice the Plaintiff's rights and remedies in the bankruptcy law. Therefore the Plaintiff reserves his right to amend this complaint to seek punitive damages against all Defendants Ozment Merrill and especially David Merrill and Merrill P.A.

Wherefore, Plaintiff, KENNETH W. BROWN demand judgment for money damages against David Merrill, Ozment Merrill and Merrill P.A. jointly and severally, including interest, costs, and any other such relief in Plaintiff's favor as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Respectfully submitted,

/s/Kenneth W. Brown, pro se
6340 Breckenridge Circle
Lake Worth, FL 33467
kenwbrown@comcast.net
562-542-6669

## CERTIFICATE OF SERVICE

I HEREBY that a true and correct copy of this Complaint has been furnished by proper service of a court summons this 28th day of November 2016 to:

David L. Merrill, Esq.
Merrill P.A.
525 S. Flagler Drive 5th Floor
West Palm Beach, FL 33401
dlmerrill@merrillpa.com

K. Drake Ozment, Esq.
2001 Palm Beach Lakes Blvd. #410
West Palm Beach, FL 33409
wizard@ombkc.com

Tina M. Talarchyk, Esq
The Talarchyk Firm
205 Worth Ave. #320
The Worth Avenue Building
Palm Beach, FL 33480
tmt@palmbeachbk11.com

# EXHIBIT 1

ANALYSIS OF PROPERTY VALUATION
DEBTOR'S RESIDENCE 4020 SOUTH OCEAN
DECEMBER 3, 2014

"Value is a word of many meanings." Justice Brandeis in Missouri ex rel. Southwestern Telephone Co. v. Public service Commission.

The Debtor provides the following as "adequate information"   pursuant to 11U.S.C `1125 and provides as follows:

(a)(1) "adequate information" means information of a kind , and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records...that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate information need to include such information about any other possible or proposed plan and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity to creditors and other parties in interest, and the coat of providing additional information;

The Debtor provides the following as "adequate protection" pursuant to 11 U.S.C. Section 361. The Bankruptcy Code requires a case by case valuation of property at several points during a Bankruptcy proceeding. For example, the same property may be found to have the following values: 1) a fair market value for the purposes of determining a debtor's pre-filing solvency; 2) a value incidental to determining "adequate protection"; Note: Heritage Highgate, Inc., 679 F.3d 132 (3d Cir. 2012), the Court of Appeals for the third Circuit ruled that, in a Chapter 11 reorganization, the term "value" as applied to section 506(a), should mean the fair market value of collateral as of a plan of reorganization.  Section 506(a)(1) provides that a secured creditor's claim is "a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property... "

3) a secured-claim valuation; 4) an "indubitable equivalence" value for plan confirmation; and 5) a liquidation value for plan of reorganization.  This constitutes different value standards and subsequent determinations. The debtor proposes a prudent business judgment for valuation in the formulation, negotiation, and confirmation of a plan of reorganization that truly serves everyone's interests and to all involved. The following provides well established objective valuations to evaluate prospective value of the property herein:

| | |
|---|---|
| Palm Beach Property Tax Appraisal value | $3,601,722 |
| Bk of America reserved bid value | $4,602,581 |
| Purchase proposal (Buyers offer) | $5,000,000 |
| Appraisal valued 2006 | $8,200,000 |
| Appraisal  valued 2007 | $9,200,000 |

Non-distress sale valuations comparatives of market value

| | |
|---|---|
| Realtor K-2 CMA valuation | $8,500,000 |
| Realtor Hampton Realty CMA valuation | $10,500,000 |
| Realtor Keyes Realty | $12,132,000 |
| Certified real Estate Appraisal April 22, 2014 | $11,000,000 |

Fair Market Value analysis current market and by Location and acreage

Manalapan Land Comp 1940 South Ocean

Lake 249' x 150' Ocean 251' x 150' = 75,000sq ft (1.72 acres)   $6,500,000

$3,779,069 per acre

4020 South Ocean 165' x 800' = 132,000Sq ft. (3.03 acres)    $11,430,581

1020 South Ocean Blvd 2acres 200' ocean $5,585,000 per acre

4020 equivalency per acre x 3 – 30% (discounted O.F.)  $11,728,850

1920 South Ocean 150' 9800 sq. ft. home (Billy Joel LLC)   $12,546,658

Home for sale 3090 South Ocean 150 x 427   611 dom   $17,900,000

Home for sale 1960 South Ocean lot 174,240 sq. ft. 485 dom   $32,500,000

The above analysis is neither debtor friendly or creditor friendly is an objective review of a non- distress sale within not outside of the ordinary course of business and not a 363 distress sale. The above value's the asset in a market condition where market values are that's heading up; where the market vale far exceeds distress values; where replacement value and comparable sale values are

more precisely greater and vary much more than a 363 disposition sale for "adequate protection" and "adequate information" for the completion of this Chapter 11 plan of reorganization. Unlike liquid assets, real estate while readily salable is dependent upon the subjectivity of time and circumstance.

Respectfully submitted,

.

Kenneth W. Brown
Debtor

# EXHIBIT 2

B6C (Official Form 6C) (4/10)

In re    **Kenneth William Brown** _____,     Case No. ___**13-13343**___
                                          Debtor

## SCHEDULE C - PROPERTY CLAIMED AS EXEMPT

Debtor claims the exemptions to which debtor is entitled under:    ☐ Check if debtor claims a homestead exemption that exceeds
(Check one box)                                                       **$146,450.** *(Amount subject to adjustment on 4/1/13, and every three years thereafter*
☐ 11 U.S.C. §522(b)(2)                                                *with respect to cases commenced on or after the date of adjustment.)*
■ 11 U.S.C. §522(b)(3)

| Description of Property | Specify Law Providing Each Exemption | Value of Claimed Exemption | Current Value of Property Without Deducting Exemption |
|---|---|---|---|
| **Cash on Hand** | | | |
| Cash on hand | 11 U.S.C. § 522(b)(3)(B) | 2,500.00 | 2,500.00 |
| **Checking, Savings, or Other Financial Accounts, Certificates of Deposit** | | | |
| Checking account Acct. No. ending 0124 Paradise Bank | 11 U.S.C. § 522(b)(3)(B) | 302.24 | 302.24 |
| Checking account Acct. No. ending 8497 Paradise Bank | Fla. Const. art. X, § 4(a)(2) | 882.34 | 882.34 |
| **Household Goods and Furnishings** | | | |
| Sofas (4); chairs (8); love seats (4); coffee tables (6); end tables (8); lamps (20); mirrors (10); bookcases (5); wall units (2); bars (2); king beds (3); queen bed; dressers (4); night stands (6); refriderators (3); dining table; dining chairs (20); buffet; servers (2); dinette tables (2); dinette chairs (4); blenders (2); coffee maker; food processor; credenzas (3); desks (4); patio tables (2); patio chairs (10:0;l patio lounges (4); VCRs (4); DVDs (4); TVs (6 - 42" LG, 5yo; 32" LG 5yo; 32" LG 5yo; and thre old tube TVs) computers (4 - 2 5yo+ PCs, HP Laptop 5yo; server 10yo); Monitors (4); printers (4); stereo (No name 30yo); radios (3); hand tools; drill; table saw; router; sander; jig saw; dishware; table ware | 11 U.S.C. § 522(b)(3)(B) | 15,000.00 | 15,000.00 |
| **Books, Pictures and Other Art Objects; Collectibles** | | | |
| Sculptures and Statues (two giraffes, two golfers, two baseball players, mermaid, wooden bear); prints and art work (street art and non-name prints.  CDs - 50; DVDs - 50. | 11 U.S.C. § 522(b)(3)(B) | 35,000.00 | 35,000.00 |
| **Furs and Jewelry** | | | |
| Dive watch | Fla. Const. art. X, § 4(a)(2) | 117.66 | 750.00 |
| **Interests in Insurance Policies** | | | |
| Variable Life Policy Policy No.: xxx3919 Western Reserve Face value:  $900K Insured:  Wendy Brown Beneficiary:  Ken Brown | Fla. Stat. Ann. § 222.14 | 18,000.00 | 18,000.00 |
| **Annuities** | | | |
| Variable Annuity Contract No.: 11378ev2 Transamerica | Fla. Stat. Ann. § 222.14 | 8,500.00 | 8,500.00 |

___1___ continuation sheets attached to Schedule of Property Claimed as Exempt

B6C (Official Form 6C) (4/10) -- Cont.

In re **Kenneth William Brown**                                              Case No. _____**13-13343**_____

                                     Debtor

## SCHEDULE C - PROPERTY CLAIMED AS EXEMPT
### (Continuation Sheet)

| Description of Property | Specify Law Providing Each Exemption | Value of Claimed Exemption | Current Value of Property Without Deducting Exemption |
|---|---|---|---|
| **Variable annuity**<br>**Contract No.:  2030024767**<br>**Security Benefit** | **Fla. Stat. Ann. § 222.14** | **35,000.00** | **35,000.00** |
| **Variable annuity**<br>**Contract No.:  203002309**<br>**Security Benefit** | **Fla. Stat. Ann. § 222.14** | **340,000.00** | **340,000.00** |
| **Variable annuity**<br>**Contract No.:  2030024768**<br>**Security Benefit** | **Fla. Stat. Ann. § 222.14** | **225,000.00** | **225,000.00** |
| **Variable annuity**<br>**Contract No.:  2030024769**<br>**Security Benefit** | **Fla. Stat. Ann. § 222.14** | **11,500.00** | **11,500.00** |
| **Variable annuity**<br>**Contract No.:  To be provided**<br>**Friends Provident Liberty Alliance Trust** | **Fla. Stat. Ann. § 222.14** | **150,000.00** | **150,000.00** |
| **Interests in IRA, ERISA, Keogh, or Other Pension or Profit Sharing Plans**<br>**IRA**<br>**Account ending 2TG06766**<br>**Merrimac** | **Fla. Stat. Ann. § 222.21(2)** | **110,000.00** | **110,000.00** |
| **IRA**<br>**Account ending 41129696**<br>**Interactive Brokers** | **Fla. Stat. Ann. § 222.21(2)** | **190,000.00** | **190,000.00** |
| **IRA**<br>**Account ending 9059**<br>**Invesco AIM** | **Fla. Stat. Ann. § 222.21(2)** | **25,000.00** | **25,000.00** |
| **Automobiles, Trucks, Trailers, and Other Vehicles**<br>**2004 Mercedes SL55 AMG**<br>**VIN:  WDBSK74F64F062840** | **Fla. Stat. Ann. § 222.25(1)** | **1,000.00** | **14,770.00** |

Total: **1,167,802.24**     **1,182,204.58**

Sheet __1__ of __1__ continuation sheets attached to the Schedule of Property Claimed as Exempt

Software Copyright (c) 1996-2013 - CCH INCORPORATED - www.bestcase.com                                              Best Case Bankruptcy

# EXHIBIT 3

B6C (Official Form 6C) (4/10)

In re    **Kenneth William Brown**                             Case No.    **13-13343-EPK**

                                            Debtor

# SCHEDULE C - PROPERTY CLAIMED AS EXEMPT - AMENDED

Debtor claims the exemptions to which debtor is entitled under:
(Check one box)
☐ 11 U.S.C. §522(b)(2)
■ 11 U.S.C. §522(b)(3)

■ Check if debtor claims a homestead exemption that exceeds
     $146,450. *(Amount subject to adjustment on 4/1/13, and every three years thereafter with respect to cases commenced on or after the date of adjustment.)*

| Description of Property | Specify Law Providing Each Exemption | Value of Claimed Exemption | Current Value of Property Without Deducting Exemption |
|---|---|---|---|
| **Real Property** <br> **Single family house located at 4020 South Ocean Blvd, Manalapan, Florida more particularly described as: TWO PARCELS OF LAND: A parcel of land in Government Lot Four (4), Section Fifteen (15), Township Forty-five (45) South, Range Forty-three (43) East, in the Town of Manalapan, Palm Beach County, Florida, more particularly described as: A parcel of land 75 feet in width measured in right angels between parallel lines, bounded on the South by a line parallel to and 90 feet Northerly from, at right angles to the South line of that certain parcel of land shorn and designated as Lot Six (6), "Commissioners' Map, Gedney vs. Pierson Partition, Chancery No.: 8802, dated February 22, 1932, prepared by Fugate and Brockway, Engineers, on file in teh Office of the Clerk of the Circuit Court on and for Palm BEach COunty, Florida, in Chancery Case No. 8802; bounded on the North by a line parallel to and 75 feet Northerly from, measured at right angles to, the South boundary thereof; on the West by the waters of Lake Worth and on the East by the waters of the Atlantic Ocean. Together with littoral rights on the Atlantic Ocean and such riparian rights on Lake Worth as are owned by the owners, (parties of the first part herein).** <br><br> **SEE ATTACHED for rights of way and second parcel description.** | Fla. Const. art. X, § 4(a)(1); Fla. Stat. Ann. §§ 222.01 & 222.02 | Unknown | 6,000,000.00 |
| **Automobiles, Trucks, Trailers, and Other Vehicles** <br> 2004 Mercedes SL55 AMG <br> VIN: | Fla. Stat. Ann. § 222.25(1) | 1,000.00 | 14,770.00 |

| | | Total: | 1,000.00 | 6,014,770.00 |
|---|---|---|---|---|

   **0**   continuation sheets attached to Schedule of Property Claimed as Exempt

Software Copyright (c) 1996-2013 - Best Case, LLC - www.bestcase.com                                            Best Case Bankruptcy

# EXHIBIT 4

3    There are numerous times -- you are the worst offender

4    now.  It will not happen one time again, or you're

5    going to no longer have a practice.  Do you understand

6    that?

7          I don't care about this whatever e-mail

8    system you have, or calendaring system, or staffing

9    problems you have.  It's done.  I'm tired of it.  You

10    have no business practicing here the way you're

11    practicing.

12         MR. MERRILL:  We are cleaning it up

13    immediately, Your Honor.  I'm -- we hear you, and we

14    understand.  We've been working all weekend trying to

15    figure out what occurred.

16         THE COURT:  You're committing malpractice

17    with your clients.  If one of them come in here, I'm

18    going to tell them to sue you.  And I will put on the

19    record, you are committing malpractice with your

20    clients.

21         MR. MERRILL:  We believe we'll have it

22    cleared up immediately, Your Honor.

23         THE COURT:  Thank you.

24         (The proceedings were concluded.)

25

Judge Paul Hyman, Jr